Dear Ms. Jenkins and Mr. Cleland:
You request our opinion regarding whether banks may invest state moneys in certificates of deposit through the Certificate of Deposit Account Registry Service (CDARS program). Before answering this question, it is necessary to review, briefly, the process whereby banks are awarded state funds to invest on behalf of the State.
The Director of Investments (Director) for the Pooled Money Investment Board (PMIB) awards state funds to banks amenable to paying a set rate of return established by the Director and complying with the PMIB's investment policies.[1] Only banks with a main or branch office in Kansas are eligible.[2] Pursuant to the PMIB's investment policies, the funds may be invested in certificates of deposit (CD).[3] A CD is an instrument issued by a bank acknowledging that a sum of money has been received and that the bank will repay the money at a certain time.[4]
As with every bank account holding state funds, state law requires that CDs be backed by sufficient collateral so that if the bank becomes insolvent, the State will be able to recoup its funds.[5] In the case of CDs, banks are required to provide securities[6] equal to the CD's market value less that portion of the amount which is insured by the Federal Deposit Insurance Corporation (FDIC).[7] Currently, that amount is $100,000. Our understanding is that if a bank issues a CD in an amount less than $100,000, additional security is not required. However, if the Director awards state moneys in excess of $100,000, a bank would then be required to provide securities to cover the uninsured portion.
Some banks are interested in the CDARS program, which they believe would alleviate the need to provide securities in an amount equal to sums in excess of $100,000. The CDARS program is a deposit-placement service by which a participating bank arranges for the allocation of a customer's deposit in excess of the $100,000 FDIC insurance limit among other participating banks in amounts eligible for FDIC insurance coverage.[8] For example, if the Director awards $300,000 to a bank, that bank would issue a CD in an amount of approximately $100,000. The bank would then contact CDARS which would, in turn, secure two other FDIC-insured institutions to issue CDs in amounts eligible for FDIC insurance, thereby ensuring FDIC coverage for the entire $300,000 deposit.[9] Under the CDARS program, the Kansas bank is the State/depositor's agent and custodian for placing funds in FDIC-insured institutions that participate in CDARS.[10] Moreover, the Kansas bank would receive "matching deposits" from the other FDIC-insured institutions, equal to the amount of the CD issued by the latter.[11]
Your concern is whether this process violates K.S.A 2005 Supp.75-4237, which provides in part:
 "(a) The director of investments shall accept requests from banks interested in obtaining investment accounts of state moneys. Such requests may be submitted any business day and shall specify the dollar amount and maturity. The director of investments is authorized to award the investment account to the requesting bank at the market rate established by subsection (b). Award of investment accounts . . . shall be subject to investment policies of the [PMIB]."[12]
"Bank" is defined as a "bank incorporated under the laws of this state, or organized under the laws of the United States or another state and which has a main or branch office in thisstate."[13] In the case of the $300,000 deposit, the participating banks in the CDARS program that issue CDs may not have a main or branch office in Kansas.
In Attorney General Opinion No. 2004-9, Attorney General Kline reviewed the CDARS program in reference to whether local governmental entities could invest their idle funds in financial institutions utilizing CDARS. Similar to the requirement that the State invest only in banks with a main or branch office in Kansas, local governmental entities can invest only in financial institutions with a main or branch bank located in the investing governmental unit or, if none exist, then in the county or counties where the unit is located.[14]
After reviewing the CDARS program and the legislative history of K.S.A. 2005 Supp. 12-1675 which is designed to insure liquidity, safety, and a reasonable rate of return for investments by local governmental entities, Attorney General Kline concluded that the statute would allow the investment of public funds in CDs through the CDARS program under the following conditions: (1) the Kansas financial institution has a main or branch office located in the investing governmental unit or, if none exist, in the county or counties where the unit is located; (2) the Kansas financial institution receives reciprocal deposits in an amount equal to the amount of funds placed by the governmental unit; (3) other participating financial institutions are located in the United States; and (4) each certificate of deposit issued by participating financial institutions is eligible for full FDIC insurance coverage.
We see no reason to depart from the rationale of our prior opinion. K.S.A. 2005 Supp. 75-4237 authorizes the Director to award state funds to banks willing to pay a set market rate and abide by the PMIB's investment policies. The PMIB, in turn, establishes investment policies that address issues such as liquidity, diversification, investment return, and safety of principal, with an emphasis on safety and liquidity.[15]
While K.S.A. 2005 Supp. 75-4237 allows the Director to award state funds only to banks with a main or branch office in Kansas, the statute does not prohibit a bank from reallocating the State's deposit under the CDARS program. Consequently, it is our opinion that a bank may invest state moneys in certificates of deposit through the CDARS program, provided that the Pooled Money Investment Board determines that the program is consonant with its investment goals.
Sincerely,
Phill Kline Attorney General
Mary Feighny Assistant Attorney General
[1] K.S.A. 2005 Supp. 75-4237.
[2] Id. K.S.A. 2005 Supp. 75-4201(d).
[3] Investment Policy/Pooled Money Investment Portfolio at p. 5 (Revised Feb. 24, 2005). See
www.pooledmoneyinvestmentboard.com/invest_policy.pdf See also
http://www.pooledmoneyinvestmentboard.com/bankfunds.html.
[4] K.S.A. 2005 Supp. 84-3-104(j).
[5] K.S.A. 75-4218; 75-4220; Investment Policy/Pooled Money Investment Portfolio, Section V(A).
[6] K.S.A. 2005 Supp. 75-4201(k).
[7] K.S.A. 75-4218(a).
[8] Attorney General Opinion No. 2004-9.
[9] The FDIC has assured participating banks that insurance coverage is available to participants in the CDARS program. Letter from FDIC to Attorney Mark T. Young, dated July 29, 2003.
[10] CDARS Deposit Placement Agreement.
[11] Id.
[12] Emphasis added.
[13] K.S.A. 2005 Supp. 75-4201(d) (emphasis added).
[14] K.S.A. 2005 Supp. 12-1675(b)(2).
[15] K.S.A. 75-4232. See Note 3, supra.